PRESENT: Keenan, Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Lacy, S.J.


CHAUNCEY LAMONT MONTAGUE

v.   Record No. 090337                          OPINION BY
                                         JUSTICE BARBARA MILANO KEENAN
                                              November 5, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the record supports a circuit court's denial of a defendant's motion to suppress evidence. The defendant contended that he was unlawfully seized when two police officers approached him requesting information regarding his identity, and used that information to determine whether there were outstanding warrants for his arrest and whether he was trespassing on private property. We also consider whether the evidence was sufficient to support the defendant's conviction for assault and battery of a law enforcement officer.

     Chauncey Lamont Montague was convicted in a bench trial in the Circuit Court of the City of Danville for possession of cocaine, in violation of Code § 18.2-250; possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2; possession of a firearm while in possession of cocaine, in violation of Code § 18.2-308.4; and assault and battery of a law enforcement officer, in violation of Code § 18.2-57(C). Before

trial, Montague filed a motion to suppress the evidence, arguing that the cocaine and firearm were obtained as a result of an unlawful seizure of his person in violation of the Fourth Amendment. The circuit court denied Montague's motion. At the conclusion of the bench trial, the circuit court sentenced Montague to a total of fifteen years and six months' imprisonment, with ten years suspended.

The Court of Appeals affirmed Montague's convictions in an unpublished order. Montague v. Commonwealth, No. 1663-07-3 (January 20, 2009). The Court held that the circuit court did not err in denying Montague's motion to suppress the evidence, because the encounter between the police and Montague was consensual in nature. Id., slip op. at 5. The Court also held that the evidence was sufficient to support Montague's conviction for assault and battery of a law enforcement officer. Id., slip op. at 6.

The evidence at trial showed that in January 2007, Lieutenant Gary Wilson and Officer Larry D. Land were engaged in off-duty employment at a local apartment complex. The officers were patrolling the premises in an effort to prevent individuals who had been barred from the complex from trespassing. The officers, who were wearing their police uniforms, observed Montague and a female companion leave one of the apartment

buildings and walk toward a nearby unoccupied vehicle that had its engine running.

When Officer Land asked Montague whether he lived at the apartment complex, Montague responded that he did not. Officer Land also asked Montague whether he owned the vehicle, and Montague replied that he did. Although Montague was unable to produce any documentation establishing his identity, he provided the officers with his name, social security number, and date of birth.

After receiving that information, Officer Land contacted a police "dispatcher" to determine whether there were any outstanding arrest warrants for Montague. Angela Davis, Montague's companion, heard Officer Land contacting the dispatcher. However, the record contains no evidence indicating whether Montague was aware that Officer Land was attempting to obtain this information.

During the two or three minutes that the officers waited for a response from the dispatcher, the officers engaged in general conversation with Montague and remained a distance of between four and five feet from him. Meanwhile, Davis walked about five feet away from the officers and sat on the steps of an apartment building.

During this time, Montague did not ask the officers whether he was free to leave, nor did he attempt to leave. Also, the

officers did not discuss with Montague whether he was permitted to leave.

As the officers continued to wait for a response from the dispatcher, Officer Land reviewed the "ban list" of individuals who were barred by the owner of the property from entering the premises. Officer Land testified that he customarily reviewed this list while waiting for a response regarding outstanding warrants because this procedure "makes it a little bit quicker for" the person talking with the police. Montague's name did not appear on the "ban list."

When the dispatcher relayed to the officers that there were two outstanding warrants for Montague's arrest, the officers immediately informed Montague that he was under arrest. As the officers attempted to take Montague into custody, Montague began "struggling," "twisting," and "jerking," in an apparent attempt to resist the officers' joint efforts to place him in handcuffs.

During this struggle, Montague repeatedly tried to reach into one of his pants pockets. When Officer Land pulled Montague's hand out of that pocket, a handgun fell onto the ground. Officer Land also observed some "packets" fall from Montague's sweatshirt pocket.

As Montague continued to resist the officers' attempt to place handcuffs on him, Lieutenant Wilson saw Montague push Officer Land and strike him in the chest with an elbow.

4

Ultimately, after a period of several minutes, the officers were able to subdue Montague. The officers then retrieved the firearm and the "packets" that later were determined to contain cocaine.

In his first argument on appeal, Montague contends that the Court of Appeals erroneously upheld the circuit court's denial of his motion to suppress the evidence. Montague asserts that his encounter with the police officers was not consensual, and that the officers lacked any reasonable suspicion to believe that he was engaged in criminal activity. According to Montague, the officers unlawfully seized him at the time that they asserted the authority to check for outstanding warrants and to ascertain whether he was trespassing at the apartment complex. Montague maintains that under these circumstances, a reasonable person would not have thought that he was free to leave the officers' presence. We disagree with Montague's arguments.

The determination whether a person has been seized within the meaning of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. Jones v. Commonwealth, 277 Va. 171, 177, 670 S.E.2d 727, 731 (2009); McCain v. Commonwealth, 275 Va. 546, 551-52, 659 S.E.2d 512, 515 (2008). Under the Fourth Amendment, any seizure of a person, no matter how brief, must have an objective justification related

5

to law enforcement.  United States v. Mendenhall, 446 U.S. 544, 551 (1980); see Baldwin v. Commonwealth, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992).

A person is seized for purposes of the Fourth Amendment when the police "by means of physical force or show of authority" restrain that person's freedom of movement. Mendenhall, 446 U.S. at 553-54; see Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968); McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); Baldwin, 243 Va. at 196, 413 S.E.2d at 647.  Conversely, a voluntary encounter between the police and a citizen does not constitute a seizure prohibited by the Fourth Amendment.  See Florida v. Bostick, 501 U.S. 429, 434 (1991); Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008); Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003).  Thus, even when the police do not have a reasonable suspicion that an individual may be engaged in criminal activity, they may approach that person and request information regarding the person's identity without violating the Fourth Amendment.  See Bostick, 501 U.S. at 435; Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 216 (1984); Florida v. Royer, 460 U.S. 491, 497-98 (1983) (plurality opinion); McCain, 261 Va. at 491, 545 S.E.2d at 546.

The Fourth Amendment also is not implicated when a person voluntarily responds to a police request to produce

6

identification, even if the person's response later is used against him in a criminal prosecution.  See Bostick, 501 U.S. at 434; Royer, 460 U.S. at 497-98; Baldwin, 243 Va. at 196, 413 S.E.2d at 648.  As long as the police do not convey, by word or deed, that compliance with their request is mandatory, there is no requirement that these encounters be based on an objective or particularized suspicion regarding the person approached.  See Bostick, 501 U.S. at 434; Mendenhall, 446 U.S. at 553-54; Baldwin, 243 Va. at 196, 413 S.E.2d at 647-48.

The Supreme Court has acknowledged that most individuals will feel obligated to respond when asked questions by a police officer, but has held that this fact alone will not convert a consensual encounter into a seizure.  Delgado, 466 U.S. at 216; Baldwin, 243 Va. at 197, 413 S.E.2d at 648.  The Court has explained that a contrary conclusion would create constitutional barriers to everyday encounters between the police and individual citizens, imposing unrealistic burdens on "a wide variety of legitimate law enforcement practices."  Mendenhall, 446 U.S. at 554.  Thus, the Supreme Court has concluded that an encounter between the police and a citizen does not constitute a seizure unless, taking into account all the circumstances of the encounter, "a reasonable person would . . . believe[] that he was not free to leave."  Mendenhall, 446 U.S. at 554; Harris, 266 Va. at 32, 581 S.E.2d at 209; Baldwin, 243 Va. at 196, 413

7

S.E.2d at 647-48; see Malbrough, 275 Va. at 169, 655 S.E.2d at 4.

If the person to whom the police questions are directed objectively "remains free to disregard the questions and walk away," there is no demonstrable restriction on the person's liberty and the encounter does not result in a seizure. Mendenhall, 446 U.S. at 553-54; Baldwin, 243 Va. at 196, 413 S.E.2d at 647. Some factors that might indicate the occurrence of a seizure include the threatening presence of several police officers, their display of weapons, a physical touching of the person to whom the questions are directed, and the use of language indicating that compliance with the police request is required. Mendenhall, 446 U.S. at 555; McCain, 261 Va. at 491, 545 S.E.2d at 545-46; Baldwin, 243 Va. at 196, 413 S.E.2d at 648.

Based on the facts and circumstances before us, we conclude that the evidence supports the circuit court's conclusion that the police encounter with Montague was consensual, and that Montague was not seized until the police attempted to take him into custody upon learning of the outstanding arrest warrants. At the outset of the encounter, the police merely approached Montague and asked whether he resided at the apartment complex. When Montague replied that he did not live there, the police requested that Montague provide some information regarding his

8

identity.  Montague willingly provided the police his name, social security number, and date of birth.

During the encounter, which lasted only two or three minutes, the police checked the "ban list" but did not engage in any show of force or use language indicating that Montague was required to remain at that location.  Also, the police did not tell Montague that he was required to stay, and Montague did not make any attempt to leave.[*]  Instead, Montague remained in the area, standing about five feet away from the officers while his companion moved to sit on some nearby steps.  Thus, the evidence supports the circuit court's conclusion that a reasonable person in Montague's position would not have thought that he was required to remain in the police officers' presence after providing them with the requested information regarding his identity.

The fact that the officers did not explicitly tell Montague that he was free to leave is not determinative of the issue whether a seizure occurred.  Harris, 266 Va. at 33, 581 S.E.2d at 210; see Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).  Rather, that evidence is only one fact among many that we consider based on the record before us.  See Samson v. California, 547 U.S. 843, 848 (2006); McCain, 275 Va. at 552,

_____

[*] The record does not contain any evidence indicating that Montague was aware of Officer Land's contact with the police dispatcher.

9

659 S.E.2d at 515. Accordingly, we conclude that the Court of Appeals did not err in confirming the circuit court's denial of Montague's motion to suppress the evidence.

We next consider Montague's argument that the evidence was insufficient to support his conviction under Code § 18.2-57(C) for assault and battery of a law enforcement officer. According to Montague, the evidence failed to establish that Montague intended to inflict physical harm on Officer Land. We disagree with this argument.

Code § 18.2-57(C) prohibits a person from committing an assault and battery knowing or having reason to know that the victim is a law enforcement officer. Because Montague does not dispute that he knew Officer Land was a law enforcement officer, the sole issue before us is whether the evidence supports the circuit court's determination that Montague committed an assault and battery on Officer Land.

In this challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the Commonwealth. Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008); Jay v. Commonwealth, 275 Va. 510, 524, 659 S.E.2d 311, 319 (2008); Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). We will affirm the circuit court's judgment unless it is plainly wrong or without evidence to support it. Code § 8.01-680; Britt, 276 Va. at 574, 667

10

S.E.2d at 765; Jay, 275 Va. at 524, 659 S.E.2d at 319; Bolden, 275 Va. at 148, 654 S.E.2d at 586.

Assault and battery are common law crimes. An assault is an "attempt with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; it is any act accompanied with circumstances denoting an intention, coupled with a present ability, to use actual violence against another person." Zimmerman v. Commonwealth, 266 Va. 384, 387, 585 S.E.2d 538, 539 (2003); accord Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005); Jones v. Commonwealth, 184 Va. 679, 681, 36 S.E.2d 571, 572 (1946). Battery is the actual infliction of corporal hurt on another that is done willfully or in anger. Commonwealth v. Vaughn, 263 Va. 31, 35, 557 S.E.2d 220, 222 (2002); see Jones, 184 Va. at 682, 36 S.E.2d at 572. The intent to harm may be shown by the circumstances of the offense, including the actor's words and conduct. Vaughn, 263 Va. at 36, 557 S.E.2d at 223.

Here, the evidence showed that Montague pushed Officer Land and struck him in the chest with an elbow. This sequence of events occurred as Montague was trying to prevent the police officers from taking him into custody on outstanding arrest warrants. Viewed in this context, the evidence was sufficient to establish that Montague acted with the intent to inflict

11

physical harm on Officer Land in order to impede the officers' ability to subdue Montague. Accordingly, we hold that the Court of Appeals did not err in concluding that the evidence was sufficient to convict Montague under Code § 18.2-57(C) of the crime of assault and battery of a law enforcement officer.

For these reasons, we will affirm the Court of Appeals' judgment.

Affirmed.